**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

August 6, 2026

LETTER TO COUNSEL

RE: *Catherine W. v. Bisignano*, Civil No. 8:25-cv-02307-GLS

Dear Counsel:

Pending before this Court are briefs filed by Plaintiff Catherine W. and the Social Security Administration. (ECF Nos. 12, 14). Upon review of the filings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025).

The Court must uphold the decision of the Social Security Administration ("SSA" or the "Agency") if it is supported by substantial evidence, and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial-evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id*. For the reasons set forth below, I will reverse the Commissioner's decision and remand the case back to the SSA for further consideration.

## I. BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on September 19, 2019. (Tr. 59, 65). In her application, Plaintiff alleges that disability began on October 15, 2014. (Tr. 59). Plaintiff's date last insured is December 31, 2019. (*Id.*). The claim was initially denied on September 22, 2020, and upon reconsideration, denied again on May 14, 2021. (Tr. 59, 65–72). On July 9, 2021, Plaintiff filed a written request for a hearing, which was granted. (Tr. 83–84). An Administrative Law Judge ("ALJ") held a telephonic hearing on January 18, 2022. (Tr. 31). On March 31, 2022, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act at any time between October 15, 2014, and December 31, 2019. (Tr. 25–26). On November 4, 2022, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1). *See* 20 C.F.R. § 422.210(a).

On January 4, 2023, Plaintiff filed an action in the U.S. District Court for the District of Maryland seeking judicial review of the Agency's decision pursuant to 42 U.S.C. § 405(g). (Tr. 1162). On August 22, 2023, the Agency filed a motion asking the district court to remand the case

back to the Agency. (Tr. 1163–64). The district court granted the Agency's request. (Tr. 1165).[1] The district court remanded Plaintiff's case to the Appeals Council on August 23, 2023. (Tr. 1163–65). Subsequently, on October 31, 2023, the Appeals Council instructed a different ALJ to analyze Plaintiff's residual functional capacity and consider Plaintiff's migraines. (Tr. 1166–71). An ALJ held another hearing on August 7, 2024, (Tr. 1097), and Plaintiff's claim was denied again on September 13, 2024. (Tr. 1090). Following that denial, the Appeals Council declined jurisdiction, and the ALJ's decision became the final and reviewable decision of the SSA once again. (Tr. 1058–60). *See* 20 C.F.R. § 422.210(a). This appeal followed.

## II. THE LAW

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a). *See, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and duration requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations (the Listings). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of the claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (alteration in original) (quoting 20 C.F.R. § 416.945(a)(2)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what they performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

---

[1] The Transcript contains the unsigned, undated order filed with the SSA's "Consent Motion to Remand." Judge Hurson issued a Paperless Order granting the "Consent Motion to Remand" on August 23, 2023. *Wise v. Kijakazi*, MBAH 23-00015 (D. Md. Aug 23, 2023) (ECF No. 18).

At steps one through four, it is the claimant's burden to show that she/he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179–80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, then the burden shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).

## III. ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The ALJ first evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 1075–89). The ALJ found that Plaintiff "met the insured status requirements" between October 15, 2014—the date that Plaintiff claimed disability—and December 31, 2019—Plaintiff's "date last insured." (Tr. 1075). Then, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during that time. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments through the date last insured:

> dislocation and arthrosis of the lateral columns of the right foot status post surgeries, right foot and ankle osteoarthritis, right foot plantar fibromatosis, polyneuropathy of the bilateral lower and upper extremities, degenerative disc disease of the cervical and thoracic spines, degenerative disc and joint disease of the lumbar spine, migraines (SSR 19-4p), asthma, generalized anxiety disorder, depression, and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c)).

(*Id.*). The ALJ found that these impairments were severe because they significantly limit Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*).

However, at step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled any of the Listings. (Tr. 1076–78). Taking into account Plaintiff's severe impairments, the ALJ next assessed Plaintiff's RFC. Despite Plaintiff's severe impairments, the ALJ determined that, since April 1, 2020, Plaintiff had the following RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] could occasionally climb, stoop, crouch, kneel, and crawl; she could balance on even surfaces and stand and walk on level terrain. [Plaintiff] could tolerate no exposure to hazards of ladders, ropes, and scaffolds, high exposed places, and dangerous, unguarded machinery, and she had to avoid work environments with loud and very loud noise (as defined in the Dictionary of Occupational Titles). She was not capable of pushing or pulling with the lower extremities to include the operation of foot pedals. She

> was capable of occasional overhead reaching, pushing, and pulling with the upper extremities to include overhead work or the operation of hand levers. She could tolerate occasional exposure to extreme cold, extreme hot [sic], humidity, vibration, and concentrated respiratory irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. She was capable of dealing with occasional changes in a routine work setting, and understanding, remembering, and carrying out simple instructions on a regular and sustained basis to complete a normal work day and week.

(Tr. 1078).

In assessing Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (Tr. 1079). The ALJ "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (*Id.*). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 1080). However, the ALJ further determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . based on her treatment notes, her self-reports in the file, and the longitudinal record." (*Id.*).

At step four, the ALJ concluded that Plaintiff had no past relevant work. (Tr. 1088). Likewise, the ALJ concluded that "transferability of job skills" need not be factored into this opinion. (*Id.*).

Before making a finding regarding step five, the ALJ conducted a hearing on August 7, 2024. (Tr. 1097–1126). At the hearing, a vocational expert ("VE") testified, relying upon the *Dictionary of Occupational Titles* and his own experience in the field of vocational rehabilitation. (Tr. 1097–1126). The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as the Plaintiff, with her RFC, could perform any work. (Tr. 1122–23). The VE opined that the hypothetical individual could perform sedentary work such as an order clerk, a charge account clerk, and a product loader. (Tr. 1123). Upon further inquiry by the ALJ, the VE opined that, if the individual was "capable of frequent, but not constant, handling and fingering," they could not work as a product loader, but the other two jobs would remain available. (*Id.*). The VE further opined that the individual could work as a telephone quotation clerk instead of a product loader, given the added limitation. (*Id.*). The ALJ then asked about a hypothetical employer's tolerance for "absences and off task behavior in competitive work." (Tr. 1124). The VE opined that employers would not tolerate a person being off task for over 10% of the workday, and that employers generally would not allow more than 18 days of excused absences per year, just 1 ½ days per month. (*Id.*). Finally, Plaintiff's counsel asked the VE about employers' general tolerance for "late arrivals or early dismissals" and added breaks beyond those given to all employees. (Tr. 1125). The VE opined that a person would be unable to keep a job if they

chronically showed up late or left early, and he further opined that there is no tolerance for added breaks beyond the standard structure (a 30–60-minute lunch break and two 15-minute breaks during each half of the shift). (*Id.*).

At step five, the ALJ ultimately determined that Plaintiff was not disabled at any time from October 15, 2024, through December 31, 2019, as there were jobs that existed in significant numbers in the national economy that she could perform. (Tr. 1089)

## IV. DISCUSSION

On appeal to this Court, Plaintiff contends that the ALJ made two errors. First, that the ALJ erroneously assessed her RFC by failing to properly perform a "function-by-function assessment" of her ability to work. Second, that the ALJ failed to adequately evaluate Plaintiff's subjective complaints. (ECF No. 12, "Plaintiff's Motion"). In response, the SSA argues that the ALJ's RFC assessment was based on substantial evidence, and Plaintiff did not point to any ALJ error when analyzing Plaintiff's subjective symptoms. (ECF No. 14, "Agency's Motion").

I have carefully reviewed the arguments and the record. I find persuasive Plaintiff's argument that the ALJ erroneously assessed Plaintiff's RFC because the ALJ failed to discuss Plaintiff's ability to remain on task for 90% of the workday given her moderate limitations in concentration, persistence, and pace. Accordingly, I find remand appropriate for the reasons set forth below.

The Court must uphold an ALJ's decision if it is supported with substantial evidence and the ALJ analyzed the proper legal standards. *Craig*, 76 F.3d at 589. However, before a Court can review an ALJ's ruling under the substantial evidence standard, the ALJ must discuss "which evidence the ALJ found credible and why." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ does not need to cite every exhibit in her decision, but she must build an "accurate and logical bridge" between her findings and the evidence. *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Mascio*, 780 F.3d at 636; *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). When an ALJ merely "summarize[s] the evidence that he found credible, useful, and consistent" and states a conclusion, the ALJ has failed to build the required connection between the evidence and that conclusion. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018), *superseded by Social Security Administration regulations on other grounds*; *see Radford*, 734 F.3d at 295 ("If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985))). Even though the Fourth Circuit has declined to adopt a per se rule requiring remand in these cases, remand is particularly warranted when assessing evidence that is "critically relevant to determining [the claimant's] disability status." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 388–89 (4th Cir. 2021), *superseded by Social Security Administration regulations on other grounds*; *see Mascio*, 780 F.3d at 636.

As a preliminary matter, a claimant's RFC is the most that a claimant could do despite her limitations. *Mascio*, 780 F.3d at 635. An ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188). In addition, the Fourth Circuit requires an ALJ's findings pertaining to a claimant's RFC to be "accompanied by 'a narrative discussion describing' the evidence supporting" each conclusion. *Dowling*, 986 F.3d at 388 (quoting *Thomas*, 916 F.3d at 311); *see* SSR 96-8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996). A proper RFC assessment consists of: "(1) evidence; (2) [a] logical explanation; and (3) [a] conclusion." *Dowling*, 986 F.3d at 388 (quoting *Thomas*, 916 F.3d at 311). The logical explanation must serve as "an accurate and logical bridge from the evidence to [a] conclusion." *Monroe*, 826 F.3d at 189. This logical explanation is just as important as the rest of the RFC assessment. *Thomas*, 916 F.3d at 311.

In addition, remand is appropriate when an ALJ makes no "explicit conclusions" about how a claimant can "perform job-related tasks for a full workday" given her mental limitations. *Thomas*, 916 F.3d at 311–12; *see also* SSR 96-8p, 61 Fed. Reg. at 34,475 ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[, which] . . . means 8 hours a day, for 5 days a week, or an equivalent work schedule."). This includes cases where an ALJ made a finding at step five that a claimant could do work in the national economy, but where they failed to determine whether the claimant could remain sufficiently on task to maintain employment, given moderate limitations in concentration, persistence, and pace and VE testimony. *See McLaughlin v. Colvin*, 200 F. Supp. 3d 591 (D. Md. 2016).

The Court finds instructive *Mona S. v. O'Malley*, Civ. No. CDA 23-1392, 2024 WL 1971761, at *3 (D. Md. May 3, 2024). In that case, the court found that the ALJ did not explain how the plaintiff could remain on task for 10% of the day given the plaintiff's moderate limitations in concentration, persistence, and pace. *Id.* The court remanded the case because the ALJ failed to "expressly address" the plaintiff's ability to remain productive, which could preclude employment if the plaintiff was off task a greater percentage of the day. *Id.* An ALJ must "(1) 'articulate why' [the plaintiff] is able to 'remain productive' for [a percentage] of the workday given her limitations or (2) explain why those limitations 'would not significantly impact' [the plaintiff's] productivity." *Id.* (quoting *McLaughlin*, 200 F. Supp. 3d at 602–03). Without that explanation, the Court "cannot meaningfully review the RFC finding, and remand is therefore appropriate." *Dyron H. v. Bisignano*, Civ. No. CRM 24-3651, 2025 WL 3280324, at *3 (D. Md. Nov. 25, 2025).

In this case, Plaintiff alleges that the "implicit finding that Plaintiff possessed the ability to concentrate, persist, and maintain pace throughout an eight-hour workday . . . defies review" because the ALJ failed to connect Plaintiff's moderate limitations to that finding. (Plaintiff's Motion, pp. 7–8). The SSA claims that this argument "misses the mark." (Agency's Motion, p. 18). The SSA contends that the RFC assessment inherently accounts for Plaintiff's ability to do work-related tasks "on a regular and continuing basis," and further alleges that there is enough in the record "to trace the path of [the] adjudicator's reasoning" such that the decision is supported

by substantial evidence. (*Id.* at 18–21 (first quoting SSR 96-8p, 61 Fed. Reg. at 34,475; and then quoting 82 Fed. Reg. 5,844, 5,858)). I do not find this argument to be persuasive because the ALJ must still build "an accurate and logical bridge" between the evidence and her conclusions before this Court can apply the substantial evidence standard. *See Thomas*, 916 F.3d at 311–12; *Monroe*, 826 F.3d at 189; *Radford*, 734 F.3d at 295.

Here, the VE testified that a person would not be able to maintain employment if she was off task more than 10% of the workday. (Tr. 1124). The RFC states that Plaintiff "was capable of dealing with occasional changes in a routine work setting, and understanding, remembering, and carrying out simple instructions on a regular and sustained basis to complete a normal work day and week." (Tr. 1078). However, at no point did the ALJ address how much time Plaintiff would spend off task each day, given her moderate limitations in concentration, persistence, and pace. (Tr. 1078, 1083–84). The ALJ credited the VE's testimony but only opined that the VE "based his responses regarding time off task and absenteeism on his professional education, training, and experience." (Tr. 1089, 1124). This was the only time in her decision that the ALJ addressed any evidence regarding the amount of time employers generally allow for "off task behavior" (Tr. 1075–90). The ALJ did find that other medical evidence undermined Plaintiff's allegations of pain and other symptoms originating from her mental limitations, including any time off task and excessive breaks. (Tr. 1084). However, at no point did the ALJ make an explicit finding about the amount of time that Plaintiff would be off task during the workday. (Tr. 1075–90). Given that Plaintiff could not be employed in the national economy if she was off task more than 10% of the day, this reasoning is critical to the ALJ's ultimate conclusion that Plaintiff could perform work and was therefore not disabled. *See Dyron H.*, 2025 WL 3280324, at *3 (remanding because the Court "cannot meaningfully review the RFC finding" given the ALJ's failure to connect the plaintiff's moderate limitations in concentration, persistence, and pace and "an assumed ability to stay on task"). Thus, I cannot find that the ALJ's analysis builds an "accurate and logical bridge" between her findings and the evidence, as required by law. *See Monroe*, 826 F.3d at 189; *see also Radford*, 734 F.3d at 295.[2]

The law is clear that a failure to analyze and explain this issue constitutes reversible error. *See Kelvin R. v. O'Malley*, Civ. No. 23-2532-CDA, 2024 WL 3937145, at *3 (D. Md. Aug. 26, 2024) (concluding that failure to assess this issue warranted remand); *Mona S.*, 2024 WL 1971761, at *3 (same); *Joe T. v. Kijakazi*, Civ. No. TMD 20-1861, 2021 WL 4286536, at *5 (D. Md. Sep. 21, 2021) (same). On remand, the ALJ should provide an "accurate and logical bridge" and a proper narrative discussion that describes how the evidence supports her conclusion that Plaintiff can be on-task for 90% of the workday given Plaintiff's moderate limitations in concentration, persistence, and pace. Because this case is being remanded on the grounds described above, I need not address other arguments that Plaintiff raises.

---

[2] As the Agency itself has stated, "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 61 Fed. Reg. at 34,478 (July 2, 1996).

## V. CONCLUSION

For the reasons set forth above, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled and, therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

/s/
The Honorable Gina L. Simms
United States Magistrate Judge